UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
NEW YUEN FAT GARMENTS FACTORY LIMITED,   :
                                         :
                  Plaintiff,             :
                                         :    **MEMORANDUM OPINION**
            -against-                    :        **& ORDER**
                                         :    07 Civ. 8304 (JFK)
AUGUST SILK, INC., and DIRECT APPAREL    :
SOURCING, INC.,                          :
                                         :
                  Defendants.            :
----------------------------------------X

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Plaintiff New Yuen Fat Garments Factory Limited's ("New Yuen") motion for an order pursuant to Rule 15 of the Federal Rules of Civil Procedure granting New Yuen leave to amend its complaint. Defendants August Silk Inc. ("August Silk") and Direct Apparel Sourcing, Inc., ("Direct") oppose the motion. For the reasons set forth below, the motion is granted.

## I.  BACKGROUND

This case arises out of a contract dispute among New Yuen, a manufacturer of athletic apparel organized under the laws of Hong Kong; Direct, an apparel retailer and importer incorporated in Delaware; and August Silk, an apparel retailer also incorporated in Delaware.

### A.  Initial Complaint

On September 24, 2007, New Yuen filed its initial complaint, which set forth the following allegations:  On or

1

about September 1, 2003, New Yuen and Direct entered into four contracts for the manufacture and delivery of apparel by New Yuen for Direct.  The first contract ("Contract 1") required Direct to pay New Yuen $136,842.00; the second ("Contract 2"), $4,185.00; the third ("Contract 3"), $162,978.60; and the fourth ("Contract 4"), $50,706.00.  New Yuen fulfilled its obligations under all four contracts, but never received payment from Direct.  The initial complaint also alleged, in the alternative, that Contracts 1, 2, 3, and 4 were between New Yuen and August Silk; that August Silk entered the agreements either directly or through its agent, Direct; and that New Yuen never received payment from August Silk.

New Yuen set forth six causes of action: (1) breach of contract and (2) unjust enrichment claims against Direct predicated on all four contracts; (3) breach of contract and (4) unjust enrichment claims against August Silk predicated on all four contracts; (5) a cause of action entitled "August [Silk] contracted with New Yuen by its agent Direct" (Compl. 9); and (6) a cause of action entitled "New Yuen was the intended third-party beneficiary of August[] [Silk's] contract with Direct," (id.).

August Silk answered the initial complaint on October 30, 2007, and Direct did the same on April 29, 2008.  Defendants

2

have asserted counterclaims, generally alleging that New Yuen failed to perform under the contracts. On December 7, 2007, the Court entered a scheduling order, setting a May 1, 2008, deadline to amend pleadings and referring the matter to a magistrate judge for discovery supervision.

## B.   Discovery

During discovery, New Yuen learned facts that (1) changed New Yuen's understanding of Contract 4 and (2) allegedly indicate that August Silk tortiously interfered with New Yuen's contracts with Direct.

## 1.   Contract 4

In the initial complaint, New Yuen alleged that Contract 4 was between New Yuen and Direct or, alternatively, New Yuen and August Silk and that it was an agreement to pay New Yuen $50,706.00 for the manufacture and delivery of apparel. According to New Yuen, testimony at the deposition of Karvin Li ("Li"), New Yuen's principal, revealed that the contract was in fact only between New Yuen and August Silk. (See Decl. of Peter Sverd at Ex. I 91:16-92:18.) New Yuen further claims that Li's testimony indicated that Contract 4 essentially contained two agreements: (1) that August Silk would purchase one last container of apparel from New Yuen by wiring $40,000 and then an additional $10,000 ten days later, and (2) that August Silk

3

would pay all outstanding debts arising from Contracts 1, 2, and 3, while receiving a $0.40 discount per garment. (See id.)  Li purportedly memorialized this agreement in a February 8, 2004, e-mail to Benedict Chan ("Chan"), August Silk's chairman. (Id. at Ex. J.)

## 2. Tortious Interference

According to New Yuen, information learned during discovery and gleaned from August Silk's answer and alternative counterclaims suggests that August Silk tortiously interfered with the contracts between New Yuen and Direct.  First, New Yuen points to allegations in August Silk's answer and alternative counterclaims as demonstrating that August Silk was aware that New Yuen and Direct had contracted together, a necessary element to a tortious interference claim. (See id. at Ex. B ¶¶ 155, 156, 157, 163.)  Second, New Yuen claims Chan's testimony at his October 22, 2008, deposition proves August Silk induced Direct to breach its contract with New Yuen.  Chan's testimony suggested August Silk and Direct had agreed that August Silk would not fund a letter of credit it had transferred to Direct and that was ultimately intended for New Yuen to pay for apparel under Contracts 1, 2, and 3.  Finally, during discovery, New Yuen learned that Defendants executed mutual releases of liability in mid-May 2004 (id. at Ex. H), and that, in a letter

4

sent that same month, Direct agreed to indemnify August Silk from any claim brought by New Yuen arising out of the transactions at issue in this case (id. at Ex. G).

### C.   Proposed Amended Complaint

Plaintiff now asks the Court's permission to file an amended complaint in light of facts learned during discovery. The proposed amended complaint redefines Contract 4 as an agreement between New Yuen and August Silk to settle outstanding payments for Contracts 1, 2, and 3, and as an agreement by August Silk to pay New Yuen a total of $50,000 for a final container of apparel.  The proposed amended complaint alleges that August Silk paid the initial $40,000 for the last container of apparel, but never paid the remaining $10,000, and further alleges that August Silk never paid the discounted outstanding balance of $304,005.60 on Contracts 1, 2, and 3.   These amendments have the practical effect of dropping Contract 4 from New Yuen's claims against Direct and redefining Contract 4 in New Yuen's breach of contract and unjust enrichment claims against August Silk.

The proposed amended complaint also interposes a new seventh cause of action against August Silk for tortious interference for August Silk's alleged role in inducing Direct to breach Contracts 1, 2, and 3.

5

## II.  DISCUSSION

### A.  Standard of Review

Rule 15(a)(2) of the Federal Rules of Civil Procedure governs the amendment of a pleading that is proposed after the moving party has been served with a responsive pleading.  Under such circumstances, the court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, the court should deny the request "where there are no colorable grounds for the proposed claim – that is, where amendment would prove futile." <u>Barrett v. U.S. Banknote Corp.</u>, 806 F. Supp. 1094, 1098 (S.D.N.Y. 1992) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis." <u>McNally v. Yarnall</u>, 764 F. Supp. 853, 855 (S.D.N.Y. 1991) (citing <u>S.S. Silberblatt, Inc. v. E. Harlem Pilot Block</u>, 608 F.2d 28, 42 (2d Cir. 1979)).

Where a scheduling order has been entered, the court must balance the "lenient standard under Rule 15(a) . . . against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" <u>Grochowski v. Phoenix Constr.</u>, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 16(b)).  According to the Second Circuit, "A finding of 'good cause' depends on the diligence of

the moving party." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). Examples of a party's failure to be sufficiently diligent include basing a proposed amendment on information long known to the moving party. See, e.g., id. at 341 (affirming denial of leave to amend after deadline where, at the time he initially commenced his suit, plaintiff had information sufficient to support his newly proposed breach of contract claim (citing Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (affirming denial of leave to amend after deadline where "the information supporting the proposed amendment to the complaint was available to [plaintiff] even before she filed suit"))).

Although the diligence of the moving party is the "primary consideration" under Rule 16(b), it is not the only consideration. Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 244 (2d Cir. 2007). "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Id.; see also Bayonne v. Pitney Bowes, Inc., No. 03 civ. 712, 2004 U.S. Dist. LEXIS 602, at *3 (D. Conn. Jan. 12, 2004) ("Under Rule 16(b), a court may exercise its discretion to deny an amendment because of the

moving party's undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previously allowed amendment, undue prejudice to the opposing party or futility of the amendment." (citing Parker, 204 F.3d 326, 339-40 (2d Cir. 2000))).

In their briefs, both parties neglect to discuss Rule 16(b) even though New Yuen made the instant motion long after the May 1, 2008, deadline set in the Court's December 7, 2008, scheduling order. Despite the parties' oversight, the Court will consider whether New Yuen has shown good cause to modify the scheduling order under Rule 16(b). The Court then considers Defendants' argument that the proposed amendment should be denied as futile.

## B.  Good Cause

New Yuen has shown good cause justifying modification of the scheduling order to permit New Yuen to add a tortious interference cause of action to its complaint. This proposed cause of action is based on evidence that was not available to New Yuen prior to discovery, namely, Chan's deposition testimony and the indemnification and mutual release agreements. New Yuen's failure to bring this claim before the deadline thus does not evince a lack of diligence. The Court consequently declines

to bar New Yuen's proposed tortious interference cause of action as untimely.

The Court believes that, with greater diligence, New Yuen might have avoided the need to amend the terms of and parties to Contract 4. These proposed amendments are based on Li's testimony and the February 4, 2004, e-mail from Li to Chan. Although Li, who is New Yuen's principal, had access to this evidence at the time New Yuen filed the initial complaint, the Court declines to bar these amendments as untimely. Importantly, there is no prejudice to the Defendants and no suggestion that New Yuen has acted in bad faith.

### B.  Futility

Defendants ask the Court to deny New Yuen's motion to amend on the ground that the proposed third, fourth, and seventh causes of action are futile.

### 1.  Proposed Third Cause of Action:

### Breach of Contract against August Silk

Defendants argue that Plaintiff's proposed third cause of action is futile to the extent it is based on Contract 4 since (1) the statute of frauds bars the claim and (2) the February 8 e-mail from Li to Chan, which precipitated the proposed amendment, is inadmissible evidence of an offer to compromise or settle.

### a.   Statute of Frauds

Under New York law,[1] "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking . . . [i]s a special promise to answer for the debt, default or miscarriage of another person." N.Y. Gen. Oblig. Law § 5-701(a).   According to Defendants, Contract 4 contains a promise by August Silk to pay New Yuen moneys owed by Direct under Contracts 1, 2, and 3.   Since the proposed third cause of action does not allege that August Silk signed a writing in connection with Contract 4, Defendants argue that Contract 4 is unenforceable against August Silk, making the proposed amendment futile.

Contract 4 does not necessarily contain a promise by August Silk to pay the debt of another.   The proposed amended complaint defines Contract 4 as, in part, "an agreement whereby, New Yuen and August agreed upon payment of all outstanding disputes." (Am. Compl. ¶ 76.)   It clarifies that those outstanding disputes relate to moneys owed to New Yuen under Contracts 1, 2, and 3. (Id. ¶ 80.)   Although the proposed amended complaint alleges that Contracts 1, 2, and 3 were between New Yuen and Direct (id.

---

[1] Both parties agree that New York law is controlling.

¶¶ 11, 20, 29), it also alleges, in the alternative, that Contracts 1, 2, and 3 were between New Yuen and August Silk directly (id. ¶¶ 50, 58, 67) or between New Yuen and August Silk through August Silk's agent, Direct (id. ¶¶ 107-09). The Federal Rules of Civil Procedure explicitly permit this kind of pleading in the alternative and note that "the pleading is sufficient if any one of [the alternative statements of a claim] is sufficient." Fed. R. Civ. P. 8(d)(2); see also Taylerson v. American Airlines, Inc., 183 F. Supp. 882, 884 (S.D.N.Y. 1960) ("A complaint which contains alternative statements of the claim, some of which are insufficient, will not be dismissed if any one alternative statement supports the claim."). Since the proposed amendment does not exclusively allege that Contract 4 is a promise to pay the debt of another, N.Y. Gen. Oblig. Law § 5-701(a) does not render New Yuen's proposed third cause of action futile.

In a footnote, Defendants argue that Contract 4 also fails under the New York Uniform Commercial Code's ("N.Y. U.C.C.") statute of frauds.[2] N.Y. U.C.C. § 2-201(1) reads,

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale

---

[2] Defendants make this argument even though they contend that the N.Y. U.C.C. does not govern Contract 4.

> has been made between the parties and signed by
> the party against whom enforcement is sought or
> by his authorized agent or broker.

N.Y. U.C.C. § 2-201(2) explains that, under certain circumstances, a writing signed only by the party seeking to enforce the contract can satisfy the statute of frauds:

> Between merchants if within a reasonable time a
> writing in confirmation of the contract and
> sufficient against the sender is received and the
> party receiving it has reason to know its
> contents, it satisfies the requirements of [N.Y.
> U.C.C. § 2-201(1)] against such party unless
> written notice of objection to its contents is
> given within ten days after it is received.

"Merchant," as used here, is "a person who deals in goods of the kind . . . involved in the transaction." Id. § 2-104(1).

Assuming arguendo that the N.Y. U.C.C. governs Contract 4, the contract is nonetheless valid as alleged. The proposed amended complaint alleges that New Yuen and August Silk entered into Contract 4 on February 4, 2004, and that New Yuen then reduced the terms to writing and delivered the written version to August Silk on February 8, 2004. (Am. Compl. ¶ 81.) The amended complaint further alleges that "August [Silk] did not refute or object to Contract 4 as written." (Id. ¶ 82.) As corporations that regularly deal in apparel, New Yuen and August Silk meet the N.Y. U.C.C.'s definition of "merchant," meaning that New Yuen can enforce Contract 4 against August Silk despite the fact that August Silk did not sign the writing. Therefore,

even assuming it governs Contract 4, the N.Y. U.C.C. would not render the proposed third cause of action futile.

### b.  Inadmissible Evidence

Defendants argue the proposed amendments concerning the February 8 e-mail are futile since the e-mail is inadmissible under Rule 408 of the Federal Rules of Evidence as an offer to settle or compromise.  As discussed above, an amendment is futile if it fails to state a claim or would be subject to a motion to dismiss on some other basis. McNally, 764 F. Supp. at 855 (citing S.S. Silberblatt, Inc., 608 F.2d at 42.   When assessing a claim under this standard, the court may consider "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp, 482 F.3d 184, 191 (2d Cir. 2007). However, the admissibility of documents incorporated in the complaint is irrelevant at the dismissal stage. Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ("The fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal . . . ."); see also Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980) (holding that the court's role in weighing a motion to dismiss "is merely to assess the legal

feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof").

Even assuming the proposed amended complaint incorporated the February 8 e-mail by reference,[3] considering the e-mail's admissibility at this stage would be improper.

Therefore, the Court finds that New Yuen's proposed third cause of action is not futile.

### 2.   Proposed Fourth Cause of Action:

### Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006). "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." Goldman v. Metro. Life Ins. Co., 841 N.E.2d 742, 746 (N.Y. 2005). Consequently, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery [for unjust

---

[3] The proposed amended complaint refers to what the Court presumes to be the February 8 e-mail in only one paragraph: "On February 8, 2004, New Yuen reduced terms of Contract 4 in writing [sic] and delivered the written Contract 4 to August [Silk]." (Am. Compl. ¶ 81.)

enrichment] for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987). However, the existence of a valid, enforceable written contract must be undisputed in order to preclude an unjust enrichment claim. Space, Inc. v. Simowitz, No. 08 Civ. 2854, 2008 U.S. Dist. LEXIS 51782, at *13 (S.D.N.Y. July 7, 2008) (citing Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. 1996)).

Defendants argue that New Yuen's proposed unjust enrichment claim against August Silk under Contract 4 fails because New Yuen never conferred a benefit on August Silk. Defendants' argument ignores the proposed amended complaint's allegations that "New Yuen undertook to perform Contract 4 by manufacturing and delivering the 'last container' of apparel to August [Silk]" (Am. Compl. ¶ 83) and that "New Yuen fulfilled its obligations under Contract 4" (id. ¶ 84). The Court must accept these allegations as true since the futility of New Yuen's proposed amendments is judged under a motion to dismiss standard. Cf. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Thus, this argument is without merit.

Defendants also argue that the existence of valid written agreements between New Yuen and Direct – namely, Contracts 1, 2, and 3 – precludes New Yuen's unjust enrichment claim against

August Silk.   Defendants again overlook the fact that New Yuen
has proposed alternative statements of its claims as permitted
by Rule 8(d)(2) of the Federal Rules of Civil Procedure.
Specifically, New Yuen has alleged in the alternative that
Contracts 1, 2, and 3 were between New Yuen and August Silk.
(Am. Compl. ¶¶ 50, 58, 67.)   Defendants have expressly disputed
the existence of any contract between New Yuen and August Silk.
(August Silk's Answer and Alternative Counterclaims ¶ 160
("[August Silk] at no time was in contractual privity with [New
Yuen]").)   Thus, Contracts 1, 2, and 3 (and Contract 4, for that
matter) are disputed insofar as they are alleged to be between
New Yuen and August Silk, and therefore cannot preclude an
unjust enrichment claim against August Silk.   Since this
alternative statement of the claim is sufficient to withstand a
motion to dismiss, the entire claim is sufficient.   See
Taylerson, 183 F. Supp. at 884.

The Court finds that the proposed amended fourth cause of
action is not futile.

### 3.   Proposed Seventh Cause of Action:

### Tortious Interference

"Under New York law, the elements of tortious interference
with contract are (1) 'the existence of a valid contract between
the plaintiff and a third party'; (2) the 'defendant's knowledge

16

of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.' Kirch v. Liberty Media Corp., 449 F.3d 388, 402 (2d Cir. 2006) (quoting Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1375 (N.Y. 1996)).

In response to a tortious interference claim, "defendant may raise the economic interest defense – that it acted to protect its own legal or financial stake in the breaching party's business." White Plains Coat & Apron Co. v. Cintas Corp., 8 N.Y.3d 422, 426 (2007). According to the New York Court of Appeals, this defense is available, among other situations, "where defendants were significant stockholders in the breaching party's business; where defendant and the breaching party had a parent-subsidiary relationship; where defendant was the breaching party's creditor; and where the defendant had a managerial contract with the breaching party at the time defendant induced the breach of contract with plaintiff." White Plains Coat & Apron Co., 8 N.Y.3d at 426 (footnotes omitted). To overcome an economic interest defense, a plaintiff must demonstrate that the defendant acted with malice or employed fraudulent or illegal means. Foster v. Churchill, 665 N.E.2d 153, 157 (N.Y. 1996).

17

Defendants argue that New Yuen's proposed tortious interference claim cannot overcome August Silk's economic interest defense since Plaintiff does not allege that August Silk acted with malice or employed fraudulent or illegal means. Defendants do not explain, however, in what way August Silk's economic interest is at stake or how inducing Direct to breach its contracts with New Yuen protected that interest. The Court is thus not persuaded at this stage that, as a matter of law, August Silk can avail itself of the economic interest defense, particularly since the instant facts are so dissimilar from those situations discussed in White Plains Coat & Apron Co.

The Court finds that New Yuen's proposed seventh cause of action is not futile.

### Conclusion

The Court grants New Yuen permission to amend its complaint as proposed. Counsel are instructed to appear for a status conference in courtroom 20-C at 10:30 a.m. on July 9, 2009.

**SO ORDERED.**

**Dated:**   **New York, New York**
        June 1, 2009

                                    _John F. Keenan_
                                    **JOHN F. KEENAN**
                            **United States District Judge**

18